IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ARIZAGA<br><br>Plaintiff,<br><br>v.<br><br>JOHN BEAN TECHNOLOGIES CORPORATION,<br><br>Defendant. | 1:13-cv-1981-MJS<br><br>**ORDER DENYING THIRD-PARTY DEFENDANT VENTURA COASTAL, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF No. 46)** |
| **AND RELATED ACTION** | |

I.  **INTRODUCTION**

Plaintiff Steven Arizaga initiated this case against John Bean Technologies Corporation and related entities in Tulare County California Superior Court on November 12, 2013. He there sought, and continues to seek, recovery, under negligence and products liability theories, for personal injuries he sustained during the course of his work for Ventura Coastal, LLC, using equipment sold by Bean (or its predecessor) to Ventura and installed in Ventura's fruit processing facility.  Bean removed the case to this Court and, as a Third Party Plaintiff, sued Third Party Defendant Ventura Coastal, LLC, for indemnity. Ventura answered and then, on November 13, 2015, filed this motion for

1

summary judgement (ECF No. 46). Bean filed an opposition (ECF No. 47) and Ventura a reply (ECF No. 48). All parties having consented to Magistrate Judge jurisdiction for all purposes, the matter was argued before the undersigned on December 11, 2015, and submitted for decision on that date.

## II. UNDISPUTED FACTS

The following brief and straight-forward facts give rise to this litigation and this motion for summary judgement; they are found to be without material dispute unless otherwise indicated[1]:

Ventura Capital is a wholesale processor of citrus juice and has a juice processing facility in Visalia, California. Bean, an equipment seller and servicer, has long done business with Ventura and apparently continues to do so. Bean formerly operated as FMC Technologies, Inc. and had a division named FMC FoodTech-Citrus Systems. It was under these two latter names that the equipment at issue in this case was sold and the contract at issue signed. Bean has since succeeded to and assumed all of the seller's rights and obligations under the sales contract. For sake of simplicity, the Court will simply refer to the seller/Third Party Plaintiff as Bean and the buyer/Third Party Defendant as Ventura.

Pursuant to a May, 2008, Sales Contract, Bean sold to Ventura and installed in Ventura's Visalia plant a conveyor belt system. [Ventura Undisputed Fact ("VUF") 1.] The installation was completed in 2008. [VUF 8.]

Plaintiff Arizaga was a mechanic employed by Ventura. On December 28, 2012, while he was performing maintenance on the conveyor belt within the course and scope of his employment with Ventura, he reports he slipped on oil residue and was injured by the belt's operation. He brought suit against Bean alleging design and/or manufacturing defects in the conveyor system – specifically, absence of a guard that would have

---

[1] They may include, if and as the Court deems relevant, facts proffered by John Bean Technologies Corporation (ECF No. 47-2) that, though objected to as irrelevant by Ventura Coastal, were not disputed (ECF No. 48-1).

2

1  prevented his injury and shortage of emergency stops – and other allegedly tortious
2  conduct. [VUF 12-17.]

3      Bean sues Ventura for indemnity against Arizaga's claims pursuant to the terms
4  of the sales contract between Ventura and Bean. Ventura argues that the contract
5  precludes indemnity on facts such as those presented here.

6      The determinative contractual "Indemnity and Disclaimer" language, in Paragraph
7  4 of the Sales Contract, is referenced as briefly as the facts.  Again for simplicity's sake,
8  the Court will substitute the parties' current names for their former names and, as
9  applicable, for "purchaser."  The contract, prepared by Bean and apparently accepted
10 without modification by Ventura, provides in pertinent part: Ventura "shall release,
11 defend, hold harmless and indemnify" Bean against personal injury suits by Ventura's
12 employees and contractors "arising out of the Work." Likewise, Bean is obligated to
13 "release, defend and hold harmless and indemnify" Ventura against personal injury suits
14 brought by Bean's employees and contractors "arising out of the Work."

15     A third reciprocal paragraph governs claims by third parties who are not
16 employees of either Bean or Ventura.  It provides in essence that Bean will indemnify
17 Ventura for injuries caused by Bean, and Ventura will indemnify Bean for injuries caused
18 by Ventura. There is no reference in this third party paragraph to injuries arising "out of
19 the Work." [VUF 3.]

20 **III.**    **THE DISPUTE**

21     So, the issue, like the facts, is quite simple:  Did Mr. Arizaga's injuries "arise out to
22 the Work" as that phrase is used in the contract.

23     Bean claims the contractual indemnity language is clear:  Where, as here, a
24 Ventura employee suffers an injury arising out of operation of this conveyor belt, Ventura
25 is to indemnify Bean against the employee's claims.

26     Ventura responds that the clear wording of the contract makes the foregoing true
27 only as to a personal injury claim which arises out of installation of the belt because
28 another portion of the 2008 contract defines the "scope of work" to be Bean's provision

of "materials and labor to install" the conveyor belt at issue in this case (as well as other equipment not at issue). [VUF 4 & 6.] According to Ventura, once installation of the conveyor was complete in 2008, Ventura's employees performed no other work falling within the said "scope of work" and no indemnity is owed for injuries, such as Arizaga's, occurring after the installation was complete. [VUF 9.]

More specifically, all agree that the indemnity obligation is limited to personal injury suits which arise out of the "Work." What is the "Work"? Ventura argues (see generally VUF 4-7): that since the word is not explicitly defined in connection with its use in the indemnity contract, we must look elsewhere in the contract for definition. It finds, and refers us to, the third "Proposal Note" on the first page of the Sales Contract which states "Pricing shown is for the scope of work as defined. . ." (ECF 46-5.) Regrettably, "scope of work" is not defined there and nowhere does it say where it is defined.

But, Ventura asserts, without explaining how it arrives at this conclusion, "scope of work" in the notes and "Work" in the indemnity provision both refer to the same thing, i.e., to what has been called the "Scope Document" for the "Phase II Plant Upgrade 2008." (ECF 46-8.) The Scope Document lists the various tasks each of the parties is to carry out with regard to this Plant Upgrade. It provides, among other things, that Bean is to provide the material and labor necessary to install modifications necessary to add several pieces of equipment including the conveyor belt Mr. Arizaga blames for his injuries. Ventura likewise is charged with providing employees and contractors to supply specified labor and materials necessary to adding the equipment. Ventura notes, without dispute, that Arizaga's injuries arose long after installation of the belt was completed. Ventura then comes to the conclusion that since the indemnity obligation only applies to injuries arising out of "the Work," and the only definition of "the Work" is that contained in the Scope of Work Document which describes only installation of the belt, no indemnity obligation exists for this post-installation injury. The problem, as Bean points out, with this final conclusion of Ventura is that it is based exclusively on Ventura's interpretation of the contract and unsupported by general rules of construction, case law, or other

1 authority.

2       Bean argues that such a strained and limited interpretation of the contractual
3 indemnity language would defeat its very purpose by cutting off protection for Bean at
4 the very time it would begin to need it – when Ventura's employees began working with
5 the equipment under Ventura's exclusive control and direction and without any
6 participation by Bean. In this regard, Bean notes Arizaga's complaint that the belt was
7 too close to a barrier and that it should have had emergency stops and a pull cord
8 running its full length. He complains that his work for Ventura required him to remove
9 the guards and maintain the belt while it was running. He says he slipped on a spilled
10 substance near the belt, fell onto it and could not shut it off. Bean argues without
11 dispute that it had no responsibility for any of those circumstances or their correction. All
12 were under the control of Ventura who trained Arizaga, told him to remove the guard for
13 maintenance, determined where to put emergency stops and had its contractor install
14 them, modified the belts and their guards after Bean's installation, and maintained the
15 walkway where Arizaga slipped.

16       Further, according to Bean, and again without argument from Ventura: Ventura is
17 a sophisticated user who advises Bean as to what it wants Bean's equipment to do and
18 where and how within their plant it wants the equipment to do it and then asks Bean to
19 design and build and install equipment that will meet those needs. Everything Bean does
20 within its scope of work is done exclusively by Bean. It does not work side-by-side with
21 Ventura on the installation. Ventura designs the emergency stops and has its contractor
22 install and wire them independently of Bean' installation work. The result according to
23 Bean: There could never have been a circumstance where a Ventura employee was
24 injured during the installation of what was in Bean's scope of work because no Ventura
25 employee worked on that installation. Thus, under Ventura's interpretation of the
26 indemnity provision, its coverage would have ended at the very time Bean needed it –
27 when the installation was complete and Ventura and its employees became solely
28 responsible for, and in control of, its operation and maintenance without involvement on

1 the part of Bean. Ventura's interpretation would leave the parties with an agreement to
2 indemnify against something which by definition could not occur.

3       Bean also cites compellingly to cases interpreting "arising out of" in the much
4 broader sense it urges on this Court. Under these cases, the phrase "arising out of"
5 "broadly links a factual situation with the event creating liability, and connotes only a
6 minimal causal connection or incidental relationship." Crown v. Capital Secs., L.P. v.
7 Endurance Am. Specialty Ins. Co., 235 Cal. App. 4th 1122, 1131 (2015) (quoting
8 Acceptance Ins. Co. v. Syufy Enterprises, 69 Cal. App. 4th 321, 328 (1999)). Thus, Bean
9 argues, the indemnity provision for actions "arising out of the Work" is not time-limited to
10 the period during the installation, but instead extends to any injuries with any minimal
11 causal connection to the conveyor belt or its installation. The claims at issue here arise
12 out of Mr. Arizaga's use of the conveyor and alleged defects with its installation, and
13 therefore fall within the indemnity provision.

14       Ventura offers no response to this line of cases beyond insisting that the Scope
15 Document controls. Ventura maintains that given that document, the indemnity provision
16 is limited to the time of the Phase II Plant Upgrade, and any obligation to indemnify
17 ceased upon completion of installation of the belt as described therein.

18 **IV. DISCUSSION**

19       "[T]he question [of] whether an indemnity agreement covers a given case turns
20 primarily on contractual interpretation, and it is the intent of the parties as expressed in
21 the agreement that should control." Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal. 3d
22 622, 632 (1975). The intent of the parties is to be ascertained primarily from the clear
23 and explicit language of the agreement. Centex Golden Constr. Co. v. Dale Tile Co., 78
24 Cal. App. 4th 992, 996 (2000). Unless given some special meaning by the parties, the
25 words of a contract are to be understood in their ordinary and popular sense. Id. at 996–
26 997.

27       Given the primacy of the words of the contract, the Court begins its analysis by
28 examining the phrase "arising out of." As previously stated, California courts routinely

interpret this phrase broadly to encompass any injury having "a minimal causal connection or incidental relationship" to the subject of the agreement. Crown, 235 Cal. App. 4th at 1131. No contrary interpretation has been urged on the Court. Thus, the Court interprets the indemnity provision to apply to any injury "originating from, having its origin in, growing out of, or flowing from, or in short, incident to, or having connection with" the Work. See id. at 1130-31 (quoting Davis v. Farmers Ins. Group, 134 Cal. App. 4th 100, 107 (2005)).

There remains, however, some dispute as to what constitutes the "Work." According to Ventura, the Work is comprised only of the installation detailed in the Scope Document. According to Bean, the Work includes both the installation and the installed equipment. In light of the broad interpretation of the phrase "arising out of," this distinction is somewhat inconsequential. Nevertheless, the Court notes that the Scope Document, relied on heavily by Ventura, discusses with some specificity the "materials and labor" included within the Phase II Plant Upgrade. Nothing in the sales contract or the Scope Document purports to limit the Work to the installation or to exclude the equipment from the scope of the Work. Reading the sales contract as a whole, the only supportable conclusion is that the Work includes both the equipment and its installation.

The Court therefore must conclude that the indemnity provision applies to any injury having "a minimal causal connection or incidental relationship" with the "materials and labor" that are the subject of the sales contract. Mr. Arizaga's alleged injuries, allegedly attributable to the conveyor belt installed by Bean pursuant to the sales contract, clearly fall within the scope of this provision.

Ventura's contrary argument that the indemnity provision is limited to injuries occurring during the installation and Phase II Plant Upgrade must be rejected. This argument is inconsistent with the sales contract and unsupported by case law interpreting the phrase "arising out of." The Court also agrees with Bean that Ventura's interpretation would lead to an absurd result – since no Ventura employees worked on the conveyor during its installation, Ventura would have contracted to indemnify against

something which could not occur. See Cal. Civ. Code § 1638 (the language of a contract governs unless it would result in an absurdity); see also Rossmoor, 13 Cal. 3d at 632 (noting that the analysis regarding the duty to indemnify also "requires an inquiry into the circumstances of the damage or injury").

Lastly, the Court rejects Ventura's argument that it would be unconscionable to require indemnity in these circumstances. Ventura claims that doing so is "akin to Firestone and Ford holding the driver of a vehicle responsible for Firestone's and Ford's own failure to produce a product free of defects." (ECF No. 48 at 2.) This analogy is inapt. Ventura is a sophisticated user and, unlike the driver of a vehicle, is deeply involved in the process of selecting, modifying and maintaining this equipment on its premises. Under these circumstances, "[w]hen the parties knowingly bargain for the protection at issue, the protection should be afforded." Rossmoore, 13 Cal. 3d at 632.

In sum, the Court concludes that the indemnity provision requires Ventura to indemnify Bean under the facts of this case. This conclusion appears to resolve not only Ventura's motion for summary judgment, but also the claims in Bean's third party complaint (ECF No. 13). That complaint seeks a court order requiring Ventura to indemnify Bean for "for any and all costs, losses, liabilities, expenses (including attorneys' fees), judgments, fines, and amounts actually and reasonably incurred in this action attributable to liability caused by Ventura Coastal or its contractors." (Id.) The Court has concluded herein that Ventura has such an obligation. Nevertheless, Ventura argues that it would be procedurally improper for the Court to grant summary judgment to Bean, a non-movant, without providing Ventura notice of this possibility and a reasonable time to respond.

A district court may sua sponte grant summary judgment in favor of the non-moving party if there are no factual issues, the moving party had notice and an adequate opportunity to address the issues, and the non-moving party is entitled to judgment as a matter of law. Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982). Generally, the moving party on a motion for summary judgment has "a full and fair opportunity to

1  ventilate the issues involved in the motion." Id. at 312. Here, the Court questions Ventura's claim that it has not had sufficient notice or opportunity to respond to the possibility of judgment against it. Indeed, Ventura has twice had the opportunity to draw the Court's attention to facts and authority in support of its position, through its motion for summary judgment and reply brief. Nevertheless, out of an abundance of caution, the Court herein provides notice to Ventura under Rule 56(f) of the Federal Rules of Civil Procedure of the Court's intent to grant summary judgment. The Court also will afford Ventura an opportunity to respond.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that the indemnity provision at issue requires Ventura to defend and indemnify Bean in this action. Accordingly, Ventura's motion for summary judgment (ECF No. 46) is HEREBY DENIED.

The Court further provides notice pursuant to Rule 56(f) of the Court's intent to grant summary judgment in favor of the non-moving party, Bean, on the basis of the analysis above. The parties will have 14 days from the date of this Order to respond to this Court's notice of intent to grant summary judgment. The parties shall keep in mind that the Court has carefully considered the points, authorities and arguments in the briefing of the instant Motion.  Those arguments are preserved for appellate review. Accordingly, responses, if any, to the notice of intent to grant summary judgment shall not repeat or reassert arguments or facts presented in connection with the instant Motion.

IT IS SO ORDERED.

Dated:   January 25, 2016         /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE